**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JENNIFER KUKLOCK

                                        Plaintiff,

v.

NEVADA DEPARTMENT OF
TRANSPORTATION,

                                        Defendant.

3:19-cv-00369-LRH-CLB

**ORDER**

Before the court is Defendant Nevada Department of Transportation's (NDOT) motion to strike related to Plaintiff's supplemental expert report. (ECF No. 39). Plaintiff opposed the motion, (ECF No. 40, 41, 42), and NDOT replied. (ECF No. 43). Having thoroughly reviewed the record and papers, the finds that NDOT's Motion to Strike (ECF No. 39) is **GRANTED**, in part, and **DENIED**, in part, for the reasons stated herein.

I.    **FACTUAL AND PROCEDURAL HISTORY**

On July 1, 2019, Plaintiff Jennifer Kuklock ("Kuklock") initiated this lawsuit alleging the Nevada Department of Transportation ("NDOT") engaged in discriminatory employment practices in their decision to fire Kucklock and in their subsequent refusal to rehire. (ECF Nos. 1, 7).  The current motion arises out of Kuklock's supplementation of her expert report on damages prepared by Kit Darby ("Darby").  (ECF No. 39 at 1). Pursuant to the court's scheduling order (ECF No. 32), the parties exchanged initial expert reports before the May 4, 2020 deadline.  (ECF Nos. 34-1; 34-2.)  The parties then each submitted a rebuttal report by the August 28, 2020 deadline.  (ECF No. 34-3; 34-4.)  Fifty-one days after the rebuttal disclosure deadline and two business days before Darby's scheduled deposition, Kuklock sent a supplemental expert report ("Third Report") to NDOT changing portions of the initial disclosure.  (ECF No. 34 at 1.)  This Third Report

increased damages and was accompanied by a new settlement demand.  (ECF No. 43 at 2.)  NDOT promptly filed the present motion to strike arguing the Third Report is an improper supplementation and requesting sanctions under Rule 37.  (ECF No 39 at 1-3.)

## II.   LEGAL STANDARDS

Initial disclosures provide significant benefits to litigation and "courts have a duty to enforce the initial disclosure requirements; however, courts must apply the Rules with an eye toward 'common sense,' keeping in mind the purposes that the Rules are intended to accomplish."  *Silvagni v. WalMart Stores Inc*, 320 F.R.D. 237, 240 (D. Nev. 2017).  The initial disclosure of damages computation "enables the defendant to understand the contours of its liability and, by extension, to make informed decisions regarding settlement."  *Id.*

Under the Federal Rules of Civil Procedure, the initial disclosure of expert opinions are conducted in accordance with the timeframe set by a scheduling order or, if no order is entered, pursuant to the timeframe stated in the Rules.  Fed. R. Civ. P. 26(a)(2)(B). The Rules require the initial disclosure of an expert's opinion to be "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  "A party must make its initial disclosures based on the information then reasonably available to it."  Fed. R. Civ. P. 26(a)(1)(E).  After initial disclosures are made, a party is required to supplement the initial disclosure "in only three situations: 1) upon court order; 2) when the party learns that the earlier information is inaccurate or incomplete; or 3) when answers to discovery requests are inaccurate or incomplete." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont.1998); *see also* Fed. R. Civ. P. 26(e)(1).

Supplementation "means correcting the interstices of an incomplete report based on information that was not available at the time of disclosure.  *Keener*, 181 F.R.D. at 640.  If the second disclosure presents "rebuttal evidence," the disclosure must be

submitted in accord with Rule 26(a)(2)(D)(ii).  *Keener*, 181 F.R.D. at 640.  Evidence is "rebuttal" evidence when it is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph(a)(2)(B)," and must be made "within 30 days after the disclosure made by the other party."  Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Keener*, 181 F.R.D. at 640.

## III.   DISCUSSION

### A.   Proper Supplementation of Expert Report

Here, Kuklock's supplemental expert disclosure contains information that is both proper and improper under the Rules.  Rule 26(e) "creates a 'duty to supplement,' not a right."  *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009).  Supplementation is not "a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions there in, can add to them to her advantage after the court's deadline has passed."  *Id.*  Overall, Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report."  *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003).

"To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e)(1) supplementation would be to invite the proverbial fox into the henhouse. The experienced expert could simply 'lie in wait' so as to express his genuine opinions only after [the opposing party] discloses hers."  *Keener*, 181 F.R.D. at 641.  While some information added in Kuklock's supplemental disclosure would have such an effect, Kuklock had a duty to supplement certain pieces of information that were included in the Third Report. For example, the Third Report corrects mistakes made in the initial report. The initial report mistakenly treated the PERS employer pay contribution plan like a 401K when, in fact, it is distinguishable from a 401k.  (ECF No. 40 at 16.)  Moreover, certain

information contained in the Third Report was not readily available to Darby at the time of the initial report. New information, such as Kuklock's continued unemployment during the COVID-19 pandemic, is the proper subject of supplementation.

The court finds that the information contained in Table One below is proper supplementation and is permissible. The table identifies the specific page references in the supplemental expert report where the information is contained, the material or information at issue, and a brief statement for the court's determination that the information is proper supplementation.

**Table 1 – Proper Supplementation**

| Page Number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **8 – 9** | 2-year delay and 6.8 years | Permitted because this material corrected a typographical error in the initial report which stated there was a one-year delay. This was wrong and the underlying calculation was based upon a 2-year delay. |

4

| Page Number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **9 -10** | "Women Pilots are actively recruited…" and women pilots are hired 2 to 4 years earlier than male pilots. | Permitted because this information was not readily available to the expert at the time of disclosure. The assumption that female pilots are actively recruited was presented in the original report. However, due to technological errors the database showing the precise information needed to be recovered. NDOT had notice of the existence of the information in the initial report and a timely disclosure of that information occurred with this supplemental report. |
| **11, 60-62** | Ex. I – Intl. Soc. Of Women Airline Pilots data | Permitted because this information was included in the database discussed above. The information was not obtainable by expert at time of initial disclosure and is a proper supplement of the initial report. |
| **14** | Table regarding pilot hiring | Permitted because NDOT agrees it was not new information after original objection. (ECF No 42-5 at 6.) |
| **15** | Airline Transport Pilot Certificate | Permitted because this corrects an inadvertent error in the expert's articulation of Kuklock's pilot certification. |

| Page Number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **19** | NDOT Pilot Pay | Permitted because this is a proper correction to a misunderstanding of NDOT's internal pay structure. The initial report assumed Kuklock would have reached a Pilot 3 position, however, this was a mistake and expert agreed with NDOT that Kuklock would only reach Pilot 2 position. |
| **19** | Other corporate pay | Permitted because this corrects an error — failing to calculate wage based upon actual W-2's—and properly supplements based upon new information—Kuklock's continued unemployment during the COVID-19 pandemic. |
| **26-28** | PERS Employer Pay Contribution Plan – Calculation of PERS benefit | Permitted because this additional section is correcting an inaccuracy in the initial report. The initial report treated the PERS contribution as a 401k plan. The expert realized this was a mistake because PERS is not a 401k. |
| **30** | Voluntary additional pilot contributions… | This information is not new and is permitted. |
| **32** | Total career earnings | Permitted because this address an inadvertent tabulation error present in the initial report and adjusts to changed circumstances—Kuklock's unemployment during the COVID-19 pandemic. |

| Page Number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **33** | 6.8-year, 23.6-year career | Permitted because this addresses a typographical error in the initial report. The underlying calculation did not change. |
| **34** | 8.8-year, includes 7-month (.6-year) job search | Permitted because this addresses a typographical error in the initial report and the underlying calculation did not change. |
| **38, 39** | 6.8-year, 8.8 year | Permitted because this addresses typographical errors and does not change any of the underlying assumptions or information. NDOT even recognized in their motion to strike that this information is consistent in both the initial and Third Report, but objects because it "replies" to an inconsistency NDOT pointed out in the rebuttal report. (ECF No. 39-6 at 12.) However, because the inconsistency was the result of a typographical error and nothing about the underlying opinion is actually changed, the information added is a proper supplement to fix an error in the report. |

| Page Number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **38, 39** | Tables and calculations | Permitted because the effects of the COVID-19 pandemic on Kuklock's employment were unforeseeable at the time. While she may have been recently laid off at the time of the initial report, the understanding that she would remain unemployed for an extended period is a changed circumstance. |
| **40** | Career value | Permitted because the change here corrects numerical errors in the initial report. Tabulation errors changed circumstances due to COVID-19, and inadvertent inaccuracies in the PERS calculation are properly supplemented by the Third Report. The underlying method for calculating loss remains the same from the initial report to the Third Report. |
| **63** | Assumption of Plaintiff's career at NDOT: 1.5 years intern, 5.3 years Pilot 2 | Permitted because this information is correcting an error in the initial report—that Kuklock would reach Pilot 3 status. |
| **64** | Tables for Age at Termination and Major Career Assumptions | Permitted because this information corrects errors in the initial report stating that plaintiff's career is 23.3 years when actual estimate is 23.6 years. The 23.6-year assumption was also included in the initial report, the Third Report fixes the typo. |

| Page Number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **65** | Tables for Model Comparison and Career Loss Summary | Permitted because this information addresses changed circumstances in Kuklock's employment status. |
| **79** | Assumptions and theories for career at NDOT | Permitted because this information addresses the expert's erred treatment of PERS as a 401k. |
| **80** | Assumptions and theories for mitigation | Permitted because, as previously discussed, prolonged unemployment during the pandemic was an unforeseeable changed circumstance affecting mitigation. |
| **81** | Table – Plaintiff's W-2s; Transparent Nevada Benefit Statement | Permitted because it corrects an error in the initial report. |

**B.    Improper Supplementation of Expert Report**

Although some of the information in Kuklock's supplemental expert report is appropriate as described above, some of the information in the report is improper. To allow free supplementation and permit rebuttal in a "supplement" would "circumvent the full disclosure requirement implicit in Rule 26. . ." and there would be no finality to expert reports. *Beller,* 221 F.R.D. at 701-702.  In fact, it appears in some instances Kuklock took the opportunity to supplement as an open door to add information that is not proper under the Rules. There are places in the report where information was changed to respond to criticisms by NDOT.  (*See, e.g.*, ECF No. 42-5 at 10.) These instances of improper supplementation do not address errors or new information but instead add information

9

that should have been included in the initial report.  Allowing such information to be added to the report would allow parties in litigation to circumvent the full disclosure requirements of Rule 26 and would lead to endless rebuttal reports disguised as supplements.  *Beller*, 221 F.R.D. at 701.

The court finds that the information contained in Table Two below violated the Rules and was not proper supplementation. Once again, the table identifies the specific page references in the supplemental expert report where the improper information is contained, the material or information at issue, and a brief statement explaining the reasons for the court's determination that the information is improper supplementation.

### Table 2 – Improper Supplementation

| Page number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **8** | Retirement age of 65 | This is not supplementation based upon an error or information that was not known at the time. The statement directly responds to criticism by NDOT. Therefore, this is improper supplementation |
| **9** | Paragraph 2: very low initial flight time | This information is not based upon any new information and was known at the time of the initial report. To allow supplementation in this scenario would cut against the finality objectives of Rule 26(e). |
| **9** | Paragraph 3: "intern in name only" | Kuklock agreed to withdraw.  (ECF No. 42-5 at 2.) |

| Page number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| 9 | Paragraph 4: "any work loss calculation" | While the statement might expressly state an implicit understanding in the initial report, an untimely supplement is the improper time to make explicit the implicit assumptions of the expert. |
| 10 | Last Paragraph: probability of Plaintiff achieving these goals | Supplementation does not give a party carte blanch to change the report outside of what is necessary to fix errors. While "similar statements" may have been made in the initial report, changing these statements now is an improper bolstering of the report. |
| 11, 58 | Ex. G-99's scholarship | Kuklock had this information before the initial report. Adding this now is improper bolstering in response to NDOT's criticism of the initial report. |
| 11, 59 | Ex. H-NDOT General Operations Manual | Kuklock admits this should be withdrawn. (ECF No. 42-5 at 8.) |
| 15-16 | Captain Kuklock is the recipient of a 99's scholarship | This information was known and obtainable at the time of the initial report and should have been included in the report then. |
| 18 | There were 7,136 women with Airline Transport Pilot licenses | This information was known and obtainable at the time of the initial report and should have been included in the report then. |

| Page number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **18** | Maintenance items | Kuklock admits this should be withdrawn. (ECF No. 42-5 at 8.) |
| **21** | Profit sharing | This information was left out of initial report and there is no indication that it was new information or correcting an error. Therefore, supplementation is improper |
| **21** | No wage growth has been added to this model… | Kuklock admits this is "in response to NDOT's rebuttal report." (ECF No. 42-5 at 10.)  Therefore, improper supplementation. |
| **22** | Major airline pay increases | New tables that "show the basis for statement in initial report" improperly bolster an opinion. Additionally, this information was obtainable at the time of initial report and no permissible reason was given for its addition in the Third Report. |
| **25** | To be conservative… | This additional language is in response to NDOT's criticism and makes explicit an implicit assumption in the initial report. An untimely supplement is the improper time to make explicit the expert's implicit assumptions. |

12

| Page number ECF No. 34-5 | Material | Explanation |
|---|---|---|
| **78** | Retirement Dates | Nothing suggests this information was left out in err. Additionally, this information was clearly known at the time of the initial report which provided a retirement consideration. |

## C.    Sanctions

Having determined that the information contained in Table Two was improper and violated the rules, the court must next determine the appropriate sanction, if any, that should be imposed. NDOT requests the imposition of sanctions for the improper supplementation of the expert report under Rule 37(c)[1]. (ECF No. 39 at 3). Rule 37(c)(1) permits the court to implement sanctions that include the payment of reasonable expenses, striking documents in whole or in part, and barring the use of information to supply evidence at a motion, hearing or trial. Fed. R. Civ. P. 37(c)(1)(A)-(C). Rule 37(c)(1) "was intended to foster stricter adherence to discovery requirements and to broaden the power of the district court to sanction violations of Rule 26." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "Two express exceptions ameliorate the harshness of Rule 37(c)(1): the information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Id.* (citing Fed. R.

---

[1]    The court notes that "when a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, the Court should first look to Rule 16(f) for determining both compliance and sanctions, as opposed to Rule 37(c)." *Aveka LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002). However, because NDOT only requested sanctions under Rule 37(c), not Rule 16(f) and both Rules permit the court to impose sanctions contained in Rule 37(b)(2)(B) & (C), the court will analyze sanctions in accordance with the sanctions requested by NDOT under Rule 37(c).

Civ. P. 37(c)(1)).  To determine whether substantial justification and harmlessness exist, the court looks to several factors, including "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Silvagni*, 320 F.R.D. at 242. Ultimately, "this is an equitable analysis entrusted to the Court's discretion." *Id.*

Here, the circumstances require the imposition of some lesser form of sanctions that does not amount to exclusion of the evidence at trial. When disclosure is provided during the discovery period and the delay can be remedied during the existing discovery period or with a limited and brief extension of discovery, lesser sanctions and other measures are more appropriate than evidence preclusion.  *Silvagni*, 320 F.R.D. at 243. The relevant factors dictate that some level of sanctions is required to give the rules teeth. *See id.*  However, in light of the information's mixed status as proper and improper, the imposition of a harsh sanction like evidence preclusion is not justified. Indeed, the circumstances surrounding the disclosure of the Third Report are suspect. "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship. . . ." *Gallagher v. Southern Source Packaging*, *LLC*, 568 F. Supp. 2d. 624 (E.D.N.C. 2008).  The Third Report, which increased the amount of damages, was disclosed to NDOT at the same time as a new settlement demand and only a few days before Darby's scheduled deposition.  (ECF No. 34 at 1.) These circumstances give pause to the court and seem to suggest that Kuklock is engaged in gamesmanship to improperly influence a settlement.

Moreover, NDOT was most certainly surprised by the Third Report and the effect on damages, however, the information that altered the damages calculation was properly supplemented. Ultimately, the information that is improper comes in the form of changes to the report's narrative. (*See* ECF No. 42-5.) The changes bolster the language in

14

response to criticism of the initial report. While this is violative of the rules, it is not an egregious violation that expands theories of liability or otherwise prejudices a party on the eve of trial. *See Silvagni*, 20 F.R.D. at 243.  Furthermore, NDOT still has the opportunity to cure the surprise through Darby's deposition. (*See* ECF No. 40 at 25.)  While Kuklock argues the information provided is otherwise harmless, the circumstances and violation of the rules do not permit Kuklock to completely escape sanctions. Therefore, the court orders the information detailed in Table Two above that violates Rule 26 to be stricken from the report.

**IV. CONCLUSION**

Consistent with the discussion above, **IT IS ORDERED** that NDOT's Motion to Strike (ECF No. 39) is **GRANTED**, in part, and **DENIED**, in part; and,

**IT IS FURTHER ORDERED** that the information contained in Table 2 — Improper Supplementation, be **STRICKEN** from the report.

**DATED:**  December 2, 2020      .

_____
**UNITED STATES MAGISTRATE JUDGE**